

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/02/2012

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 06-31759 |
| RENATO POMPA; fdba R. P. POOL, *et al* § | CHAPTER 13 |
| § | |
| Debtor(s). § | JUDGE ISGUR |
| § | |
| § | |
| RENATO POMPA, *et al* § | |
| § | |
| Plaintiff(s), § | |
| § | |
| vs. § | ADVERSARY NO. 11-3651 |
| § | |
| WELLS FARGO HOME MORTGAGE, § | |
| INC. § | |
| § | |
| Defendant(s). § | |

## MEMORANDUM OPINION

Plaintiffs Renato and Petra Pompa allege that Wells Fargo Mortgage, Inc., their mortgage lender, improperly charged fees during the pendency of the Pompas' chapter 13 plan and improperly applied their plan payments. The Pompas assert that these actions violate various Bankruptcy Code sections, as well as national and local procedural rules. Wells Fargo moves to dismiss on various grounds. The Court grants, in part, and denies, in part, Wells Fargo's motion to dismiss; the Court grants the Pompas leave to amend.

## Background

The Pompas are former chapter 13 debtors who completed the requirements of their chapter 13 plan. Wells Fargo held a deed of trust on the Pompas' home. The plan provided for arrears on Wells Fargo's secured claim to be paid and cured through the plan. On May 5, 2011,

the Court issued an order deeming the Wells Fargo mortgage current, and the Pompas were given a discharge on May 17, 2011.  The bankruptcy case was closed on November 22, 2011.

The Pompas now bring suit alleging that Wells Fargo misapplied payments and improperly charged undisclosed fees during the pendency of their chapter 13 plan.  The Pompas claim they are entitled to relief under §§ 524, 105, and 506 of the Bankruptcy Code, Fed. R. Bankr. P. 2016, and the local Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments.  The Pompas seek actual and statutory damages, as well as legal fees and expenses.

Wells Fargo moves to dismiss the Pompas' claims for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted.

Wells Fargo contends that the Court lacks subject matter jurisdiction over this suit.  Because the Pompas have received their discharge, Wells Fargo argues, the claims are not "related to" a bankruptcy case, as they do not "impact[] . . . the handling and administration of the bankrupt estate." *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995) (citations omitted).

Wells Fargo moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Wells Fargo argues three grounds for its 12(b)(6) motion.  First, Wells Fargo contends that the Code sections and procedural rules cited by the Pompas do not provide a remedy for private parties to sue upon under *Cort v. Ash*, 422 U.S. 66 (1975) and its progeny.

Second, Wells Fargo argues that even if the Pompas are permitted to sue under the provisions in question, they are not entitled to relief with respect to §§ 524, 506, and Fed. R. Bankr. P. 2016, because Wells Fargo's actions did not violate those provisions.  Wells Fargo

argues that it has not violated the discharge injunction under § 524, because the fees in question were not dischargeable in the first place. Wells Fargo also argues that charging fees without notice and approval by the Court does not violate § 506 and Rule 2016, as these sections do not require notice and approval of fees charged by mortgage lenders. It reasons that requiring notice and approval would modify its contractual rights in violation of 11 U.S.C. § 1332(b)(2).

Finally, Wells Fargo contends that even if notice and approval were required under Rule 2016, it has not yet violated that rule, as the Pompas allege only that Wells Fargo has "charged" the fees in question. Wells Fargo contends that the Pompas must allege receipt of payment and application of the fees against existing funds.

In the Plaintiffs' Response to the motion to dismiss, the Pompas move for leave to amend their complaint in the following ways:

- to withdraw their FDCPA claim;

- to make a more definite statement of fact if deemed necessary by the court;

- to supplement any insufficient allegations of fact the court identifies;

- to allege that the imposition of fees and charges not disclosed or authorized violated the plan and order confirming the plan and to supplement factual allegations in connection with such if deemed necessary by the court;

- to allege that Wells Fargo is barred by principles of estoppel from collecting fees and charges not disclosed or authorized which exceed the cure amount in its proof of claim and to supplement factual allegations in connection with such if deemed necessary by the court;

- to supplement the factual allegations to support a request for punitive damages based on a pattern of misapplication of payments;

- to include a contempt action under § 105 for violation of § 524.

For the reasons stated herein, the Court holds:

- The Court has subject matter jurisdiction over all the Pompas' claims.

- The Court has constitutional authority to enter a judgment in this matter.

- A private right of action exists pursuant to § 105 for violations of the Court's orders and the discharge injunction.

- There is no private right of action under § 506, Fed. R. Bankr. P. 2016, and the Chapter 13 Trustee Procedures. The Court therefore dismisses the Pompas' claims for the violation of these provisions.

- Under the facts currently alleged by the Pompas, Wells Fargo has not violated §524, but the Court grants leave to amend to allege facts that could constitute a violations of that provision.

### The Pompas' Allegations

The Pompas allege that on August 2, 2011, Wells Fargo sent correspondence to the Pompas informing them that they were delinquent on their mortgage payments. ECF No. 1 at 3. They allege further that Wells Fargo initiated numerous telephone calls asserting delinquency and threatening foreclosure, and that Wells Fargo sent a representative to collect their alleged arrears on December 26, 2011. *Id*. The Pompas allege that these events occurred because Wells Fargo misapplied payments and improperly charged the Pompas undisclosed fees during the pendency of their chapter 13 plan. *Id.* at 4.

### Jurisdiction

The United States District Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157, this proceeding is referred to the Bankruptcy Court by General Order 2012-06.

### Constitutional Authority

This Court has constitutional authority under *Stern v. Marshall*, 131 S.Ct. 2594 (2011) to decide this matter. Under *Stern*, Bankruptcy Courts may not enter final judgments in matters that are within the exclusive jurisdiction of Article III courts. *Stern*, 131 S.Ct. at 2620. This

opinion does not involve a final judgment; granting in part and denying in part a motion to dismiss is an interlocutory order. *West v. WRH Energy Partners LLC (In re Noram Res., Inc.)*, 2011 WL 6936361, at *1 (Bankr. S.D. Tex. Dec. 30, 2011).

## Analysis

The Court first considers Wells Fargo's 12(b)(1) motion. Second, it considers Wells Fargo's 12(b)(6) motion. Finally, it discusses the Pompas' motion for leave to amend.

### I. Rule 12(b)(1) Motion

The burden of proof under a 12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When considering a Rule 12(b)(1) motion to dismiss, a court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norke Stats Oljeselskap v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). The court "must accept all factual allegations in the plaintiff's complaint as true." *Id.* (citing *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981)). The Bankruptcy Court must have bankruptcy-related jurisdiction over each claim independently. *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 608 (S.D. Tex. 1999).

Wells Fargo contends that the claims in question do not fall within the Court's subject matter jurisdiction, as they do not "impact[] . . . the handling and administration of the bankrupt estate," *Feld,* 62 F.3d at 752 (citations omitted). Wells Fargo argues that the fees in question are exempted from the estate under 11 U.S.C § 1328(a)(1), and thus there can be no impact upon the estate. Further, the bankruptcy estate terminated upon entry of the discharge order, and so there is no longer an estate to impact.

Wells Fargo's theory ignores binding Fifth Circuit precedent with respect to post-discharge violations of debtor protections. In *Bradley,* the Fifth Circuit mandated the bankruptcy court exercise jurisdiction to determine whether a former debtor could assert a claim for a post-discharge violation of the anti-discrimination provisions of § 525 of the Bankruptcy Code. *In re Bradley,* 989 F.2d 802 (5th Cir. 1993).

Wells Fargo has conflated the *Feld* rule that provides the standard for the court's "related to" jurisdiction under § 1334 with *Bradley's* requirement for the exercise of "arising under" jurisdiction. The Pompas' claims fall within the "arising in" and "arising under" jurisdiction granted the court by § 1334. *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 546 (Bankr. S.D. Tex. 2009).

The Court applies the law set forth in *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007). In *Padilla*, this Court held that subject matter jurisdiction was proper over claims based on violations of Bankruptcy Code provisions and provisions of the Federal Rules of Bankruptcy Procedure that flowed from charges made during the pendency of the chapter 13 plan. *Padilla,* 379 B.R. at 649-650. Jurisdiction was proper under § 1334, because (1) the suit concerned "matters pertaining to the implementation or execution of the plan," *Id.* at 670, n. 4 (quoting *In re Craig's Stores of Tex., Inc.,* 266 F.3d 388 (5th Cir.2001) (citations omitted); and (2) "courts retain jurisdiction to enforce their own orders," *Padilla* at 670, n. 4 (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted).

The Pompas' claims based on alleged violations of § 506 of the Bankruptcy Code, Rule 2016, the confirmation order, and the Chapter 13 Trustee Procedures meet the *Craig's Stores* rule, as they relate to implementation or execution of the plan. The Pompas' claims based on

alleged violations of §§ 524(i) and 506, Rule 2016, and the confirmation order also meet the *Shillitani* rule, as they allege the violation of a court order.

The Pompas' Second Claim for Relief, which is based on an alleged violation of § 524, falls within the *Shillitani* rule. This claim alleges a willful failure to credit payments received under the Pompas' chapter 13 plan, which § 524(i) deems a violation of the discharge injunction.. Since the discharge injunction in this case was implemented by the issuance of a court order, a violation of the discharge injunction would be a violation of a court order. The § 524 claim thus falls within the *Shillitani* rule.

The Pompas' Third Claim for Relief, which is based on an alleged violations of § 506 of the Bankruptcy Code, Rule 2016, the Court's orders, and the § 524(i) discharge provision, falls within both the *Craig's Store* and *Shillitani* rules. As will be discussed later, the Pompas have moved to amend to allege a violation of the order confirming the plan, and this amendment will be relevant to their third claim for relief. There can be little doubt that enforcing the order confirming the plan pertains to the implementation and execution of the plan, as there would be little point in having a plan if the Court were powerless to stop a creditor's violations of it. Thus the Pompas' third claim falls within the Court's subject matter jurisdiction under the *Craig's Stores* standard. Additionally, the fact that the third claim deals with a violation of the order confirming the plan makes it fall within the *Shillitani* rule.

The Pompas' Fourth Claim for Relief, which is based on violations of the Chapter 13 Trustee Procedures, falls within the *Craig's Store* rule. Under section 4 of the plan, mortgage payments are to be made "in accordance with the Home Mortgage Procedures adopted pursuant to Bankruptcy Local Rule 3015(b)" (i.e. the Chapter 13 Trustee Procedures). ECF No. 159-2 at

4. The Chapter 13 Trustee Procedures relate to the implementation or execution of the plan, because under section 4, the Chapter 13 Trustee Procedures *are part of the plan.*

The Pompas' post-discharge claims either relate to implementation or execution of the plan or call for the enforcement of court orders. The Court has subject matter jurisdiction over the claims. The Court therefore considers whether the Pompas have, with respect to each of these claims, stated a claim upon which relief may be granted.

## II. Rule 12(b)(6) motion

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 129 S.Ct. 1937, 1950 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

A. **Private Right of Action: § 105 and the Discharge Injunction**

Because the Court has the power to enforce its own orders, the Pompas are permitted to sue pursuant to § 105 for violations of the Court's orders and the § 524(i) discharge provision.

Wells Fargo contends that alleged violations of court orders and the § 524(i) discharge provision do not create "private causes of action" pursuant to § 105 under the four factors announced by the Supreme Court in *Cort*. The Court has rejected this misreading of *Cort* on numerous occasions, because bankruptcy courts have the authority to enforce their own orders under § 105. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056 (5th Cir. 1997); *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439 (1st Cir. 2000); *Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009); *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289 (Bankr. S.D. Tex. 2007).

Debtors who sue based on violations of court orders are not asking the court to create new rights of action, but simply to use the power granted by § 105 to enforce its own orders. *Id*. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." It is unclear why Congress would give the bankruptcy courts the power to "carry out the provisions of this title," but forbid exercise of that power merely because the request for enforcement was initiated by a debtor.

The Pompas' second and third claims for relief are attempts to enforce the orders of the court. The second claim alleges a violation of the discharge injunction, which is a court order, and the Pompas have moved to amend to include § 105 sanctions for violation of that order. The Pompas' third claim is, at its heart, based on a violation of the confirmation order, and the Pompas have moved to amend to specifically allege such a violation. Therefore, because these

two claims are based on violations of court orders, the Pompas are permitted to seek sanctions for Wells Fargo's alleged violation of the Court's orders and the § 524(i) discharge provision.

Wells Fargo counters, however, that the inclusion of Fed. R. Bankr. P. 3002.1(i)(2), a provision in the new Fed. R. Bankr. P. 3002.1 that allows a court to "award other appropriate relief" for a mortgage lender's failure to give notice of fees under that rule, is evidence of a lack of intent to allow sanctions for the same conduct under § 105. The Court does not draw this inference from the change in the rules, and the text of the new provision does not exclude sanctions under § 105. It is equally possible that Rule 3002.1 was amended to clarify that relief already existed. In any event, under the confirmed plan in this case, Wells Fargo had the duty to seek its fees. There cannot be any reading of Rule 3002.1 that it would override the terms of a previously confirmed plan. Nor could a rule upset the binding effect of a confirmed chapter 13 plan. *See United Student Aid Funds, Inc. v. Espinosa,* 130 S.Ct. 1367 (2010).

Citing *Torrence v. Murphy*, 815 F. Supp. 965 (S.D. Miss. 1999), Wells Fargo argues that there is no private right of action under § 524. According to Wells Fargo, § 524 is designed to provide debtors a defense to post-petition collection actions, but not to create an affirmative right of recovery. Most circuits agree that § 524 does not imply a private right of action. *Joubert v. ABN AMRO Mortg. Grp., Inc.*, 411 F.3d 452, 456 (3d Cir. 2005) ("This Court has not addressed whether § 524 implies a private right of action, either alone or through § 105(a), but the weight of circuit authority is that it does not.")*; e.g.*, *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011). The Bankruptcy Court's contempt power under § 105(a), however, provides remedies for violations of § 524. *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) (declining to decide whether there is a private right of action under § 524 because "a remedy is readily and expressly available through another section of the Bankruptcy Code,

namely, § 105(a)"). Because the Court has the authority under § 105 to grant relief for violations of § 524(i), the Pompas' are permitted to sue based on a violation of the discharge order.

### B. Private Right of Action:  § 506, Fed. R. Bankr. P. 2016, and the Chapter 13 Trustee Procedures

The Court applies the law set forth in *Cano*, holding that there is no private right of action for violations of § 506. Extending the logic of *Cano*, the Court holds that there is no cause of action for a violation of Rule 2016 and the Chapter 13 Trustee Procedures, except to the extent that they are incorporated into the order confirming the plan.

As set out in *Cano,* § 506 is meant to govern and coordinate the activities of debtors and creditors through the chapter 13 process—it does not by itself give rise to rights. See *Cano*, 410 B.R. at 527-528. A cause of action arises only when an order incorporating that provision is violated, and the cause of action is based on the violation of the order itself, not the individual provisions. *Id.* This is also true of Rule 2016 and the Chapter 13 Trustee Procedures, which regulate, *inter alia*, the process for creditors to be reimbursed for fees incurred during the plan period.

This is not to say, however, that a violation of a particular Code provision or procedural rule is irrelevant. For example, if the order confirming the plan dictated that a certain procedural rule governs a creditor's actions under the plan, and the creditor did not comply with that procedural rule, the creditor would be in violation of the confirmation order. This would give rise to a § 105 claim by the debtor (see discussion of alleged § 506 violation below). However, the mere violation of the procedural rule itself cannot be an independent ground for suit.

The Pompas' third claim for relief alleges "violations of the provisions of Section 105 and 506 of Title 11 of the United States Code and Rule 2016 of the Federal Rules of Bankruptcy

Procedure." ECF No. 1 at 4. To the extent that the third claim is based on a violation of § 506 and Rule 2016 alone, it is dismissed. The Pompas cannot assert a claim for "violations" of § 105; that section grants powers to the Bankruptcy Court, but does not create duties for parties.

The Court has the authority under § 105(a) to enforce its orders, but the Pompas' third claim for relief, as originally asserted, does not allege the violation of any particular orders. However, the Pompas propose to amend their complaint to allege that the imposition of fees and charges not disclosed or authorized violates the Pompas' plan and the confirmation order. If the Pompas fail to amend to allege these violations, Wells Fargo may file a renewed motion to dismiss.

Because it appears that the Pompas' fourth claim asserts a right of action solely based on alleged violation of the Chapter 13 Trustee Procedures, that claim is dismissed. The Pompas are not barred, however, from using a violation of the Chapter 13 Trustee Procedures in support of a claim for violations of the confirmation order.

### C. § 524(i) Violation

Wells Fargo's alleged actions would violate § 524(i).

The Pompas assert that Wells Fargo violated the discharge injunction under § 524. Wells Fargo argues that it did not violate § 524, as the fees in question are not discharged. The Court agrees that the fees were not discharged. However, § 524(i), added to the Bankruptcy Code by BAPCPA in 2005, deems misapplication of plan payments a violation of the discharge injunction.

The Court held in *Cano* and *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (2008) that post-discharge attempts by mortgage lenders to collect arrearages, fees, and costs that were incurred during the plan period do not violate § 524, as these

fees are excepted from discharge by the operation of §§ 1328(a)(1), 1322(b)(2), and 1322(b)(5). *Cano*, 410 B.R. at 527; *Rodriguez*, 396 B.R. at 364-365. However, *Cano* and *Rodriguez* involved chapter 13 cases that were filed before 2005, the year in which § 524 was modified to include § 524(i).

Section 524(i) states:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i). The Pompas allege that they have made all required payments to Wells Fargo. They contend that their so-called default stems from Wells Fargo's failure to properly credit payments made under the plan. Wells Fargo, they argue, violated the discharge injunction under the provisions of § 524(i).

The Court concludes that under § 524(i), willful failure to credit payments received under a plan constitutes a violation of the discharge injunction, regardless of whether the debt at issue was discharged. Section 524(i) does not discharge all debts dealt with under the plan, but nothing in its language restricts its application to discharged debts. In fact, if § 524(i) applied only to discharged debts, the provision would be superfluous; a failure to credit plan payments on discharged debts would violate the discharge injunction regardless of whether § 524(i) were enacted. The Court concludes that § 524(i) was intended to provide a remedy for failure to credit payments on debts not discharged under the plan. Deeming willful misapplication of plan payments a violation of the discharge injunction under § 524(i) does not impermissibly modify

home mortgage lenders' rights in violation of § 1322(b)(2); it simply enforces the plan provisions and ensures that the completion of the plan will actually result in a fresh start for the debtor. *See Mattox v. Wells Fargo, N.A.*, 2011 WL 3626762, at *7 (Bankr. E.D. Ky. Aug. 17, 2011) (noting in dicta in a case involving misapplication of home mortgage payments that § 524(i) "provides a clear remedy for misapplication once a discharge injunction is entered"); *Collier on Bankruptcy* ¶ 524.08 ("Section 524(i) is a response to decisions in which courts questioned whether they had the ability to remedy a creditor's failure to credit payments properly," including *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333 (11th Cir. 2000), a case involving the application of home mortgage payments toward legal fees). *But see In re Houlik*, 2011 WL 4459099, at *4 n.25 (Bankr. D. Kan. Sept. 25, 2011) ("A violation of § 524(i) requires proof that the creditor failed to properly credit payments in accord with the plan and improperly attempted to collect discharged debt."). Because the Pompas allege a violation of § 524(i), the Pompas' second claim for relief is not dismissed.

### D. § 506 Violation

The Pompas allege in their complaint that they were charged undisclosed fees "during the pendency of their Chapter 13 plan," ECF No. 1 at 4, and these fees are the basis for the Pompas' claim for violation of § 506. Because these fees were charged "during the pendency of their plan" they were necessarily post-confirmation fees. However, § 506(b) has no post-confirmation application. *Rake v. Wade*, 508 U.S. 464, 468 (1993) ("§ 506(b) applies only from the date of filing through the confirmation date"); *Sanchez*, 372 B.R. 289 (same); *Padilla*, 379 B.R. at 655-657 (same).

As the Court explained in *Padilla*:

> Section 506(b) then allows for the imposition of various charges (including interest), but only to the extent of the value of the collateral. *United Sav. Ass'n. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). If § 506(b) were applied post-confirmation, it would directly conflict with § 1325. Section 1325(a)(5)(ii) requires the payment of interest on all secured claims, whether undersecured or oversecured, where the debtor retains the collateral. One cannot simultaneously apply § 506(b) (disallowing interest on undersecured claims) and § 1325(a)(ii) (mandating interest on undersecured claims). Moreover, value is a moving target. Over a five-year chapter 13 plan, the value of collateral could rise or fall dramatically. If § 506(b) were applied post-confirmation, it would require the treatment provided in the chapter 13 plan to vary with changes in the underlying collateral's value.

The Court dismisses the Pompas' third claim to the extent that it is based on violations of § 506.

### E. Notice and Application under Rule 2016

Although the Pompas do not have a private right of action under Rule 2016, they may sue for violation of Rule 2016 to the extent it is incorporated into the confirmation order.

Wells Fargo argues that requiring fee applications under Rule 2016 is a modification of a mortgage lender's rights in violation of § 1322(b)(2), as its Deed of Trust requires only that the lender give notice to the borrower before assessing fees. The Court held in *Cano* and *Rodriguez* that Rule 2016 requires mortgage lenders to file applications for fees they intend to collect against the debtor, and that this procedural requirement does not constitute a modification of the mortgage. The Court is not persuaded by Wells Fargo's reasoning to change this outcome.

### F. "Seeking Collection" Under Rule 2016

Wells Fargo contends that under Rule 2016, a creditor must submit an application for fees only when seeking to collect those fees, not when fees are simply "charged." The Pompas

assert that Wells Fargo violated Rule 2016 by "charging" fees, not by attempting to collect. Wells Fargo argues that these allegations are insufficient.

When a creditor merely notes in its internal record keeping that it is owed a fee, it is not "seeking collection" under Rule 2016 by that act, standing alone. However, the Court disagrees that a "charge" in the sense alleged by the Pompas cannot constitute an act to collect. The Pompas do not allege that Wells Fargo has merely made an internal note of fees: they allege active steps to collect the fees, including correspondence, phone calls, threats of foreclosure, and a personal visit by a company representative. The Pompas allege acts sufficient to constitute collection.

The issue will be a factual one for trial. If Wells Fargo did not attempt to collect the fees, then there will have been no violation.

### G. Motion for Leave to Amend

In their response to the motion to dismiss, the Pompas move for leave to amend their complaint in the following ways:

- to withdraw their FDCPA claim;

- to make a more definite statement of fact if deemed necessary by the court;

- to supplement any insufficient allegations of fact the court identifies;

- to allege that the imposition of fees and charges not disclosed or authorized violated the plan and orders confirming the plan and to supplement factual allegations in connection with such if deemed necessary by the court;

- to allege that Wells Fargo is barred by principles of estoppel from collecting fees and charges not disclosed or authorized which exceed the cure amount in its proof of claim and to supplement factual allegations in connection with such if deemed necessary by the court;

- to supplement the factual allegations to support a request for punitive damages based on a pattern of misapplication of payments;

- to include a contempt action under § 105 for violation of § 524.

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A decision to grant leave is within the discretion of the Court, but Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir.2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir.1999)). The Court does not have the discretion to deny leave to amend unless it has a substantial reason for doing so. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir.1996) (citations omitted). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

There is no substantial reason to deny leave to amend. The Court therefore grants leave as to all proposed amendments.

## Conclusion

The Court grants, in part, and denies, in part, Wells Fargo's motion to dismiss. The Court does not dismiss the Pompa's second claim for relief. The Court dismisses the Pompas' third claim for relief, in part, and dismisses the fourth claim for relief. The Court grants the Pompas' motion for leave to amend.

SIGNED **June 29, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE